THE ROBINSON BANK

v.

FRANK O. MILLER ET AL.

THOMAS V. LAMPORT

v.

FRANK O. MILLER ET AL.

SINGLETON B. ALLEN

v.

FRANK O. MILLER, ET AL.

*Mortgages—Foreclosure—Parties—Practice.*

1. A person being a party to the record in a given case, as a member of a firm named, and not dismissed therefrom, he is still a party to the

record, although, pending litigation, he dissolves connection with such firm, and the attorneys who appeared for the firm continue to be his attorneys of record, and it is proper to require him to make answer to cross-bills, in such case.

2. When such person has been appointed a receiver pending litigation, he may be required to account for rents received, and keep the property insured therefrom.

3. In a controversy based upon a bill filed for the cancellation of certain mortgages, the case being here the second time upon the original bill, the cross-bills of certain mortgagees and petition for the appointment of a receiver pending the litigation, this court declines, in view of the evidence, to interfere with the decree of the trial court refusing to cancel certain mortgages, but providing for their foreclosure, the dismissal of a certain cross-bill, and appointment of a person named as receiver of the mortgaged property.

[Opinion filed March 3, 1893.]

APPEAL from the Circuit Court of Crawford County; the Hon. WILLIAM C. JONES, Judge, presiding.

Mr. E. CALLAHAN, for The Robinson Bank and Singleton B. Allen.

Messrs. PARKER & CROWLEY for Thomas V. Lamport, Wiley S. Emmons, William W. Walter, Willis Emmons et al.

MR. JUSTICE PHILLIPS. An original bill was filed by the Robinson Bank to cancel certain mortgages, one made by Miller and wife to Lamport, one by John S. Emmons and wife to Willis Emmons, and another by John S. Emmons and wife to Wiley S. Emmons, and William W. Walter, John T. Noye and other judgment creditors of these mortgagors, intervened and asked to be made parties, and a decree was entered granting the prayer of the original bill. From that decree an appeal was prosecuted to this court, and an opinion filed, and the case reported as Miller v. The Robinson Bank, 34 Ill. App. 460. On the cause being remanded to the Circuit Court there was an amendment of the original bill and a cross-bill, filed by Wiley S. Emmons and William W. Walter and certain parties brought in by further amend-

ment and service by reason of the death of some of the original parties. Without repeating the statement of facts as made in Miller v. The Robinson Bank, *supra*, we adopt that statement at this time. On the case being remanded a decree was entered foreclosing the mortgages on the cross-bill of Willis Emmons, and the cross-bill of Wiley S. Emmons and William W. Walter, and dismissing the cross-bill of Lamport, and canceling the same in accordance with the prayer in the original bill.

It further appears that during the pendency of this litigation the bank sold and conveyed the mill property to Singleton B. Allen, who entered into possession of the same and operated said mill. On motion of the complainants in the cross-bill the court appointed Allen as receiver, and from the decree entered on the original and cross-bills after it being remanded from this court, three separate appeals are presented—one by the Robinson Bank, which is from the decree entered in foreclosing the cross-bill on the mortgages made by John S. Emmons, one by John V. Lamport from the decree dismissing his cross-bill and canceling his mortgage, and one by Singleton B. Allen from the decree as to him, which finds that the conveyance to him by the bank of the mill property was subsequent to the mortgages made by John S. Emmons to Willis Emmons, Wiley S. Emmons and John W. Walter, and that the said property, as conveyed by the bank to Allen, was subject to the lien of said mortgages, and that Allen should retain possession and the mortgagees should have a lien on the rents if the proceeds of the mortgaged premises are insufficient to pay the same. The first, second, third, fourth, ninth and tenth assignments of error are assigned on the findings of the court in decreeing the foreclosure of the mortgage made by John S. Emmons and denying the prayer of the original bill to cancel such mortgages. The evidence discloses the fact that what was termed the mill property, which was owned by John S. Emmons and Newton before Miller became a member of the firm, was about four acres of land, as described in the mortgages made by Emmons, and as described in the deed

made by Emmons and wife to the Robinson Bank, Emmons owning one-third and Newton owning the other two-thirds interest in that tract, and when Miller purchased an interest in the mill the land described in the deed made by Newton and Miller to the bank is the same tract, excepting about three-quarters of an acre in the northeast corner of the land.

The interest of each of the respective partners was purchased and the conveyances were made to them respectively as tenants in common; as between themselves they each held their interests as tenants in common, and no part of the property was purchased with partnership funds. In the conveyance to Miller made by Newton, and in the purchase of the interest at the foreclosure sale by Emmons, they each treated the property as property held by them as tenants in common, and in dealing with the bank it treated the property the same way and called on them individually for their respective parts of the $5,400 owing the bank at the time the note for $1,800 was executed with Emmons and Walter as sureties thereon, and when the bank took the conveyance of the mill property from Newton and Miller, that conveyance was of " all the interest of the grantors in," etc., and in the conveyance to the bank of the mill property by Emmons, they took the conveyance as the " one-third undivided interest." The bank treated the property as being held by them as tenants in common, and these deeds were drawn by a member of the firm that constituted the Robinson Bank, and at the time the bank, through its attorney, who was a partner in the bank, only credited Newton, Emmons and Miller with the estimated value of the interest of Newton, recognizing the mortgages as being an incumbrance, and taking a confession of judgment for the residue of their indebtedness. But aside from this, the testimony shows that before the execution of the deed by Emmons to the bank, Woodworth, to whom the deed was made, as trustee for the bank, knew of the existence of the notes and mortgages made by Emmons. John S. Emmons testifies that Woodworth said they would have to pay these

mortgages, and would pay them, but would fight the Lamport mortgage.    Wiley S. Emmons testifies that Woodworth said to him before the deed was made by John S. that "he understood that I had a mortgage; I told him that I had; he said that it was a valid mortgage and that it would be paid;    *    *    *    he requested me to go and advise John to sell; he wanted title to the mill and wanted my influence to get it.    He wanted me to influence John to make his deed to them for his interest in the mill.    He said that the mortgage was valid and would be paid.    He wanted me to go, and I did go, and influence John to make a deed."

William W. Walter testifies that after the deed was made Woodworth said to him that the mortgage to Emmons and himself would be paid.    And George W. Fletcher testifies that Woodworth said to Walter after the deed was made that he would pay those mortgages off, that they were all right except the one by Miller.    Although Woodworth denies these statements, yet the weight of proof is not with him.    That the execution of the deed to the bank by Emmons subsequent to this promise of Woodworth makes the equity of these plaintiffs much greater.    The testimony of Willis Emmons shows that at the time he signed the note as security for John S. to Wilkin, John S. said that if he wanted a mortgage he would give it upon his interest in the mill, and subsequently John S. wanted him to take one-half his interest in the mill, but he would not do it, and John S. Emmons testifies that he told his sureties on the $1,800 note; that if he had a deed he would mortgage to them, and when he got a deed would give them a mortgage.    And the execution of these mortgages and placing the same on record before any other lien attached would give a prior lien to these mortgages.    It was not error to enter the decree of foreclosure on the cross-bills filed to foreclose the mortgages made by John S. Emmons and in refusing to cancel these mortgages.

The sixth, seventh, eighth and eleventh assignments of error are because of the decree in ruling Singleton B. Allen to answer the cross-bills and in requiring him to account

for rents pending the litigation and that he should keep the mortgaged premises insured. Singleton B. Allen was a member of the firm constituting the Robinson Bank and one of the complainants in the original bill. After the decree was originally entered in the Circuit Court, and before the prosecution of any writ of error to this court, he dissolved connection with and ceased to be a partner in the Robinson Bank. No steps were ever taken to amend the bill by dismissing it as to him, and so far as their record shows he is still a complainant in the original bill. When the cause was remanded from this court, a notice that a motion would be made on the first day of the September term, 1890, of the Circuit Court of Crawford County, to reinstate said cause, and the service of that notice, was acknowledged by the attorney for the bank, and it is insisted that as Allen had dissolved connection with that firm, the court had no jurisdiction over him. He being a party to the record as a member of the firm, and not dismissed therefrom, he was still a party to the record, and the attorneys who filed the original bill were still his attorneys of record, and it was not error to require him to answer the cross-bills. He became a purchaser pending the litigation, and on the application of the complainants in the cross-bills, the court appointed him as receiver of the mortgaged premises, and as such receiver to account for the rents and profits pending the litigation, and to keep the mortgaged premises insured. He being the receiver, it was clearly within the power of the court to require him to account for the rents, as it is shown that the mortgaged premises are a scant security for the amount decreed to the complainants on the foreclosure of the mortgages made by John S. Emmons; and inasmuch as the value of the premises was dependent on the preservation of the mill, and without it the security would have been wholly insufficient, it was clearly within the power of the court to require the receiver, from the rents, to keep the property insured.

The fifth assignment of error is that the court erred in decreeing a foreclosure of the mortgage described in the cross-bill against the mortgaged premises in its present con-

dition, disregarding the improvements made by the Robinson Bank and by Singleton B. Allen. It appears from the evidence that during the pendency of the litigation the Robinson Bank made improvements on the property, and after that bank, through its trustees, conveyed its interest to Allen, Allen also made improvements; but these improvements were all made while the litigation was pending, and the court could not, by its decree, sever machinery placed in the mill or repairs made by either the Robinson Bank or by Allen, but must sell the interests conveyed by the mortgages as the one-third interest in the property; and if any rights exist in the bank or Allen by reason of any improvements made, on the coming in of reports of sale their rights could be protected. It was not error to decree the sale of the premises as made on the cross-bills. Without repeating what we said when this case was before us heretofore, we adhere to what we then said, and this disposes of the errors assigned by Singleton B. Allen and the Robinson Bank. The errors assigned by Thomas V. Lamport are in the granting of the prayer of the original bill and in dismissing his cross-bill. From the entire evidence in the record we are not satisfied of the good faith of that mortgage, and Lamport's refusal to answer questions as to the source from which he derived the money, together with other evidence as to the derivation of some of the money, is such that we will not disturb the finding of the court on that question.                    *The decree is affirmed.*